IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


HEARBEST, INC., )
                        Plaintiff, )
                                )
        vs. )                       Civil Action No. 13-1026
                                )   Chief Magistrate Judge Maureen P. Kelly
ADECCO USA; ADECCO )
EMPLOYMENT SERVICES, INC., )
                        Defendants. )
                                )   Re:    ECF No. 25
ADECCO USA; ADECCO )
EMPLOYMENT SERVICES, INC., )
                Counter-Claimants, )
                                )
HEARBEST, INC., )
                Counter-Defendant. )


## <u>OPINION</u>

**KELLY, Chief Magistrate Judge**

        Defendants Adecco USA and Adecco Employment Services, Inc. (collectively "Adecco")

have filed a Motion for Summary Judgment (ECF No. 25), seeking the entry of judgment in their

favor as to all claims asserted against them in this action.  Upon consideration of the Motion for

Summary Judgment, the briefs filed in support and in opposition thereto (ECF Nos. 26 and 31-1),

the Defendants' Concise Statement of Material Facts (ECF No. 27), the Joint Statement of

Undisputed Facts (ECF No. 28), as well as the extensive exhibits filed by both parties (ECF Nos.

29 and 31), and for the following reasons, the Motion for Summary Judgment is granted as to

Plaintiff's fraud claim (Count II) but denied in all other respects.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff HearBest Inc. ("Plaintiff" or HearBest") has filed this breach of contract action arising out of an employment services contract entered into with Adecco. Hearbest is a corporation that provides hearing aids and related services to persons who are hearing impaired, with offices in Mt. Lebanon, Pennsylvania and Wheeling, West Virginia. In the spring of 2011, HearBest's President and Chief Executive Officer, Deborah Jo Albaugh ("Albaugh"), entered into discussions with an Adecco representative to hire a temporary medical office administrator for HearBest's Mt. Lebanon Office. The parties subsequently entered into a written contract wherein Adecco agreed, *inter alia*, to conduct a National Criminal Record File check for any assigned employee ("Associate") who possessed the qualifications sought by HearBest.

On September 21, 2011, Adecco informed HearBest that it had selected a qualified Associate for the position of medical office administrator and forwarded Evalyn McKinney's name to Plaintiff. On October 3, 2011, McKinney began working for HearBest in the position as a temporary contract employee. McKinney worked as a contract employee until November 1, 2011, when she was hired as a permanent employee by HearBest. Upon converting McKinney to an employee of HearBest, Hearbest paid Adecco a "separation fee" of $6,750.00. (ECF No. 29-20, pp. 10-11).

Beginning in March 2012, McKinney embezzled money from HearBest and some of its customers. Between March 2012 and June 2012, McKinney stole approximately $16,000. McKinney's embezzlement was eventually discovered, and her employment with HearBest was terminated. McKinney was prosecuted and convicted for her criminal activity. HearBest claims additional damages flowing from McKinney's manipulation of billing and office management to cover up her theft.

The contract between the Adecco and HearBest that governed McKinney's placement expressly provides:

> Adecco's standard pricing provides for emailed invoices, Web Time approval system, full Adecco interview and standard Adecco assessments and National Criminal Record File check for each Associate at time of first assignment. Further screens may be performed at additional costs.

(ECF No. 29-11). The contract also provides for a subsequent or additional "Background Check" as follows: "Adecco provides discount pricing for background screenings through LexisNexis. Client will pay for the cost of all background checks plus an administrative fee equal to 12%." Id. The standard pricing provision includes a "National Criminal Record File check" at no additional cost and, in contrast to the Background Check provision, does not refer to LexisNexis. It is undisputed that Adecco did not conduct a national criminal record file check or a background check of McKinney in conjunction with her referral to HearBest.

HearBest has provided evidence it obtained after McKinney's arrest, establishing that in 2006, two criminal indictments were lodged against McKinney in the United States District Court for the Western District of Pennsylvania. The first indictment, at No. 2:06-CR-53 (W.D. Pa. February 7, 2006), alleges that Ms. McKinney violated 18 U.S.C. § 1029(a)(2) when she knowingly and with the intent to defraud, used a credit card belonging to another person. The indictment alleges that McKinney also violated 19 U.S.C. § 513(a) when she forged at least fourteen checks over the course of three months. The docket entries at No. 2:06-CR-53 reveal that after McKinney was released on bond to await trial, the United States Attorney filed a Motion to Revoke Bond. The prosecution sought revocation of bond because McKinney continued to violate the law by stealing and cashing checks from her employer, in violation of the conditions of her bond. (See, No. 06-cr-53, ECF No. 16).

The Court's examination of the docket (available through PACER, as explained at length by Defendant) reveals that the Motion to Revoke Bond, No. 06-CR-53 (ECF No. 16)(W.D. Pa. May 25, 2006), was filed with publicly available "Supporting Documentation and Evidence."[1] The documentation identifies McKinney by her Social Security number and explains that while McKinney was released on bond, she gained employment as an Administrative Assistant with Commercial Cleaning Systems. A statement from the owner of Commercial Cleaning Systems identifies McKinney by her Social Security number. The statement explains that on April 28, 2006, McKinney pried open the door to his business office and stole checks, which she then made out in her name, forging her employer's signature. Other missing checks forged by McKinney were discovered by her employer, and losses estimated as a result of her criminal conduct totaled nearly $30,000. McKinney's criminal activity while on bond led to a second criminal action filed against her in federal court at No. 06-CR-239, (W.D. Pa. July 7, 2006).

The docket entries in No. 06-CR-53 also separately and plainly reveal that in conjunction with the Court's decision to release McKinney on bond to await sentencing, McKinney was required to obtain permission from Federal Pretrial Services prior to obtaining any further employment. (No. 06-CR-2006, ECF No. 23). McKinney was sentenced to a term of imprisonment for fifteen months and three years of supervised release. (No. 06-CR-53, ECF No. 30). The parties do not dispute that had Adecco disclosed McKinney's criminal background, HearBest would not have agreed to her placement and would not have hired her as its office manager.

---

[1] This Court may take judicial notice of the contents of its own docket in an unrelated matter. See, e.g., Orabi v. Attorney Gen. of the U.S., 738 F.3d 535, 537 (3d Cir. 2014).

In the pending Motion for Summary Judgment, Adecco claims that it did not breach the contract and, in any event, HearBest did not suffer damages as a result of the alleged breach. First, Adecco claims it was not required to conduct a criminal background check because McKinney was first placed into a position by Adecco in 2004, before Adecco changed its standard pricing provision to include completion of a national criminal record file check on all associates. At the time it changed its policy, Adecco "grandfathered" those individuals who had been previously placed with employers. Thus, because Adecco "first assigned" McKinney with an employer in 2004, and again with an employer in 2010, Adecco claims it would not have conducted a criminal background check prior to placing her with HearBest.[2] (ECF No. 27, ¶¶ 7, 8, 24).

Second, Adecco claims that the phrase "National Criminal Record File check" refers to a propriety database maintained by LexisNexis. This database does not include federal criminal indictments and convictions. Accordingly, if a National Criminal Record File check had been completed, McKinney's 2006 convictions for embezzling from employers would not have been discovered or disclosed and, therefore, no damages were sustained by the alleged breach of contract. (ECF No. 27, ¶ 25).

Third, Adecco claims that even if the LexisNexis database included federal indictments and convictions, a search would not have disclosed McKinney's 2006 convictions because insufficient "identifiers" connected the convictions to McKinney. According to Adecco, LexisNexis requires two "identifier hits" to match an individual with a conviction record. Such identifiers include "a person's name, birthdate, driver's license number, or social security

_____

[2] Adecco also claims that after 2008, the standard pricing agreement required criminal background checks at the time an associate was first assigned by Adecco, not when first assigned with a contracting client. (ECF No. 27, ¶ 7).

number." (ECF No. 27, ¶ 27). Adecco states that a physical check of the federal docket conducted after suit was filed failed to locate a second identifier. Adecco ignores the fact that such identifiers are plainly listed in several documents filed in McKinney's criminal proceedings; however, relying on its inability to locate them, Adecco contends HearBest sustained no damages as a result of the alleged breach.

Citing these reasons, Adecco argues that it is entitled to summary judgment in its favor as a matter of law as to HearBest's claim for breach of contract. In addition, Adecco seeks judgment in its favor as to HearBest's fraud claim, as barred by the "gist of the action doctrine" and alternatively, seeks the dismissal of certain elements of the damages claimed by HearBest, which it contends were not caused by the alleged breach of contract.

HearBest opposes Adecco's Motion for Summary Judgment, arguing that the contract is capable of interpretation and patently requires a national criminal background check at the time McKinney was first assigned by Adecco to HearBest. Alternatively, HearBest contends that there are material issues of fact regarding the meaning of the contract's standard pricing provisions and, in either event, HearBest contends that summary judgment in favor of Adecco is inappropriate. HearBest also argues: (1) that the gist of the action doctrine does not apply to its fraud claim, (2) that sufficient evidence exists to connect all damages sustained to Adecco's breach of its obligations and, (3) that full recovery is permitted under the broad damages provision of the employment services contract.

## II.     STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Celotex Corp. v.

Catrett, 477 U.S. 317, 322 (1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247–48 (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287–88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992). In order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. Fed. R. Civ. P. 56(c)(1); see Celotex, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in response to summary judgment). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure

of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323; see Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). Failure to properly support or contest an assertion of fact may result in the fact being considered undisputed for the purpose of the motion, although a court may also give parties an opportunity to properly provide support or opposition. Fed. R. Civ. P. 56(e).

## III.    DISCUSSION

### A.    Count I - Breach of Contract

The parties agree, for purposes of Adecco's Motion for Summary Judgment, that Pennsylvania law applies to the claims asserted by Plaintiff. (ECF No. 26, p. 9 n.1).  Under Pennsylvania law, to succeed on its breach of contract claim, HearBest must prove: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. McShea v. City of Philadelphia, 995 A.2d 334, 340 (Pa. 2010).   The threshold question is whether Adecco's interpretation of the contract, excusing its failure to conduct a criminal background check, is correct as a matter of law.

#### 1.  Contract Terms

"A contract is enforceable when the parties reach mutual agreement, exchange consideration, and have set forth the terms of their bargain with sufficient clarity. The essential terms to a contract include an offer, acceptance, consideration, and/or mutual agreement. Specifically, time or manner of performance, and price or consideration are essential terms of an alleged bargain, and must be supplied with sufficient definiteness for a contract to be enforceable." Great N. Ins. Co. v. ADT Sec. Servs., Inc., 517 F. Supp.2d 723, 736 (W.D. Pa. 2007)(internal citations omitted). HearBest and Adecco dispute the manner of performance required by the contract, related to the scope and timing of a national criminal background check.

"The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties. In cases of a written contract, the intent of the parties is the writing itself." Lesko v. Frankford Hosp.-Bucks Cnty., 15 A.3d 337, 342 (Pa. 2011) . "[W]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed …. Hence, where language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as manifestly expressed, rather than as, perhaps, silently intended." Id. (internal citations omitted).

"It is clear also, that every agreement is made and to be construed with due regard to the known characteristics of the business to which it relates; and hence the language used in a contract will be construed according to its purport in the particular business, ..." Franklin Sugar Ref. Co. v. Howell, 118 A. 109, 110 (Pa. 1922) (internal citations omitted). "[I]t is well settled that ... intention must be ascertained from the entire instrument taking into consideration the surrounding circumstances, the situation of the parties when the contract was made and the objects they apparently had in view and the nature of the subject matter." Lower Frederick Twp. v. Clemmer, 518 Pa. 313, 543 A.2d 502, 510 (Pa.1988) (internal citations omitted).

Here, in exchange for HearBest's payment of "Adecco's standard pricing," Adecco agreed to provide "emailed invoices, Web Time approval system, full Adecco interview and standard Adecco assessments and National Criminal Record File check for each Associate at time of first assignment." (ECF No. 31-1, Exh. 13).

Adecco contends that the term "National Criminal Record File check" refers solely to a LexisNexis database, which is limited in scope to state criminal records. Adecco further contends that "at time of first assignment" means when Adecco first assigned the person to a position, regardless of the identity of the employer. Finally, Adecco contends that the provision

didn't apply to HearBest's transaction in any event, because Adecco exempted from background checks certain "grandfathered" employees, including McKinney, who had been placed by it prior to the adoption of the standard pricing provision.

It is undisputed that Adecco drafted the contract and yet, none of these qualifying conditions are set forth therein. Adecco's position runs contrary to the oft-cited principle that silent intentions of a contracting party do not determine the construction to be given an agreement. T.W. Phillips Gas & Oil Co. v. Jedlicka, 208, 42 A.3d 261, 267 (Pa. 2012). Indeed, Adecco appears to be asking the Court to insert each of these missing terms, which the Court cannot do absent a showing that both parties intended to be so bound, or to prevent injustice. See, e.g., CMR D.N. Corp. v. City of Philadelphia, 803 F. Supp. 2d 328, 334 (E.D. Pa. 2011)(citations omitted) ("a court may imply a term missing from the contract 'only when it is necessary to prevent injustice and it is abundantly clear that the parties intended to be bound by such term'").

With respect to Adecco's attempt to retroactively rewrite the express language of its agreement, Adecco's argument mirrors one that it asserted in Herlihy Moving & Storage, Inc. v. Adecco USA, Inc., No. 09-931, 2010 WL 3607483 (S.D. Ohio Sept. 9, 2010). In Herlihy, Adecco sought summary judgment in a breach of contract action commenced against it when the plaintiff similarly sustained damages arising out of Adecco's failure to conduct a criminal background check. The individual placed by Adecco had several prior state and federal convictions for felony theft, passing bad checks and bank fraud. Unfortunately, after referral by Adecco, the individual stole over $200,000 from the plaintiff. Adecco argued that a breach of contract action could not be supported in the absence of evidence of the agreement as to the intended scope of the "background check," "i.e., the specific states/counties which should be reached, how many years should be reviewed, whether the check should be run on all crimes or

just felonies, if the check should include any former names for which the candidate was known."

The Court rejected this argument out of hand.

> The ordinary meaning of 'background check,' at least encompasses a criminal background check. If a background check had been performed, there is no dispute that Nickison's criminal background (all of her crimes were committed in central Ohio, where Herlihy Company is located) would have been uncovered and that she would not have been hired by Herlihy.
>
> With regard to Adecco's additional arguments, there would have been no need for Herlihy to determine the cost of the background check outside of the cost he had already negotiated for a background checked employee. Nor would there be a need to inquire as to the time a background check would require. Herlihy testified that he told the Adecco employee, "We have to have a background check," to which she responded, "We do it…. These alleged exchanges evidence an agreement for Adecco to provide an individual who not only possessed all of the other qualifications agreed upon, but also one that had been background checked before he or she was sent to Herlihy Company."

Id. 2010 WL 3607483 *5-6.

In the case at issue, in a written contract (as opposed to the oral contract at issue in Herlihy), Adecco agreed to conduct a National Criminal Record File check, without limitation or definition. As argued by Plaintiff, "National Criminal Record File check' is a phrase without special meaning.'" (ECF No. 31-1, p. 14). The Court agrees. The term does not make reference to a trademarked proprietary program, does not limit the scope of investigation to exclude federal criminal records, nor does it exclude any employee previously placed by Adecco. Adecco's silent intentions, not manifested by the clear and unambiguous language of the contract, do not change its agreed-to obligation to conduct a national criminal record file check for all employees at the time of the referral.

The Pennsylvania Supreme Court has held that "[o]nly where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity 'if it is reasonably susceptible of different constructions and

capable of being understood in more than one sense.' This question, however, is not resolved in a vacuum. Instead, 'contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts.' In the absence of an ambiguity, the plain meaning of the agreement will be enforced. The meaning of an unambiguous written instrument presents a question of law for resolution by the court." Murphy v. Duquesne Univ. of the Holy Ghost, 777 A.2d 418, 429-30 (Pa. 2001) (internal citations omitted).

In the instant action, while Plaintiff proffers a lengthy alternative argument that the contract term is ambiguous, this Court finds that as a matter of law that the plain language of the contract, not being terms of art between the parties, required Adecco to conduct a national criminal record file check when McKinney was first placed with HearBest. "National," in its ordinary meaning, is an adjective, not limited to various state or local jurisdictions, but descriptive of the reach of its subject, "[n]ationwide in scope <national emergency>." NATIONAL, Black's Law Dictionary (9th ed. 2009). The meaning of national is not altered by the remainder of the challenged phrase which identifies the object of the search (criminal record files). Similarly, when examined in the context of the "surrounding circumstances, the situation of the parties when the contract was made and the objects they apparently had in view and the nature of the subject matter," Lower Frederick Twp. v. Clemmer, 543 A.2d at 510, the term "first assigned" requires a finding that in exchange for the placement/separation fee charged, an Adecco customer would obtain a "national criminal record file check" when an employee was first assigned employment with that paying customer.

Because the contract is not obscure, and the meaning of the provision at issue can be determined without any guide other than a knowledge of the simple facts on which, from the

nature of language in general, its meaning depends, the Court finds that "reasonably intelligent persons, considering" the meaning of "National Criminal Record File check" when McKinney was "first assigned," "in the context of the whole [contract]," would not "differ regarding its meaning," as referring only to a check for criminal records encompassing  all federal and state jurisdictions within the United States of America, conducted at the time McKinney was first placed with HearBest. See, Accurso v. Infra-Red Servs., Inc., No13-7509, ___ F. Supp.2d. ___, 2014 WL 2218128, at *8 (E.D. Pa. May 28, 2014)(quoting Musisko v. Equitable Life Assurance Soc., 496 A.2d 28, 31 (Pa. Super. 1985)).

For each of these reasons, the Motion for Summary Judgment filed by Adecco with respect to HearBest's breach of contract claim is denied.  Further, because there is no genuine issue of material fact on this point, and additional factual development is unnecessary, the Court will grant summary judgment *sua sponte* to Plaintiff on this issue.  See Fed. R. Civ. P. 56(f)(1). [3] Accordingly, the Court finds, as a matter of law, that Adecco breached its obligation to conduct a national criminal record file search prior to referring McKinney to HearBest and, as a result,

---

[3] The Court acknowledges that it has not provided Adecco notice that the Court considered granting summary judgment *sua sponte* to Plaintiff.  However, in this instance, given the fact that Defendant fully briefed the purely legal issue at hand, and sought judgment in its favor as a matter of law based upon the language contained in the contract, Adecco is not prejudiced by this result.  See, e.g., Harrison v. Cabot Oil & Gas Corp., 887 F. Supp. 2d 588, 597 (M.D. Pa. 2012)("Though notice normally is required to the losing party, a district court may enter summary judgment *sua sponte* without notice under certain circumstances. Gibson v. Mayor and Council of City of Wilmington, 355 F.3d 215, 224 (3d Cir. 2004). Those circumstances exist here; 'the presence of a fully developed record, the lack of prejudice, or a decision based on a purely legal issue.'").

Adecco is liable for any damages HearBest establishes it sustained as a result of the breach, as provided by the contract.

## B. Fraud: "Gist of the Action Doctrine"

Adecco contends that the "gist of the action doctrine" bars HearBest's claim for fraud, because it is duplicative of HearBest's claim for breach of contract. HearBest responds that its fraud claim is not derivative of its claim for breach of contract. Rather, it argues that the fraud claim challenges Adecco's conduct in inducing Ms. Albaugh to enter into the agreement with an assurance that it would conduct a national criminal background check, and then failing to disclose that because McKinney was "grandfathered," Adecco never intended to conduct such a check.

"As a practical matter, the [gist of the action] doctrine precludes plaintiffs from recasting ordinary breach of contract claims into tort claims." eToll, Inc. v. Ellias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa. Super. 2002). Whether the gist of the action doctrine applies to bar a claim is a question of law.

> [T]he test is not limited to discrete instances of conduct; rather, the test is, by its own terms, concerned with the nature of the action as a whole.
>
> "Gist" is a term of art in common law pleading that refers to the "essential ground or object of the action in point of law, without which there would be no cause of action." Black's Law Dictionary 689 (6th ed.1990). "Action" is defined by Black's Law Dictionary as "a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law.... The "gist of the action" test, then, is a general test concerned with the "essential ground," foundation or material part of an entire "formal complaint" or lawsuit.

eToll, 811 A.2d at 15 (quoting American Guar. and Lia. Ins. Co., v. Fojanini, 90 F. Supp.2d 615, 622–23 (E.D. Pa. 2000)); Pollock v. Nat'l Football League, No.12-CV-130, 2013 WL 1102823 (W.D. Pa. Mar. 15, 2013), aff'd, 13-1987, 2014 WL 503640 (3d Cir. Feb. 10, 2014).

The Pennsylvania Supreme Court has not expressly adopted the gist of the action doctrine, but both the United States Court of Appeals for the Third Circuit and the Pennsylvania Superior Court have predicted that it will do so. See, Williams v. Hilton Group, PLC, 93 F. App'x 384, 385–86 (3d Cir. 2004); Reardon v. Allegheny Coll., 926 A.2d 477, 485 (Pa. Super. 2007); eToll, Inc, 811 A.2d at 14. As acknowledged in Reardon, the Pennsylvania Supreme Court some forty years ago stated:

> To permit a promisee to sue his promissor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions. Most courts have been cautious about permitting tort recovery for contractual breaches and we are in full accord with this policy. See Developments in the Law—Competitive Torts, 77 Harv. L. Rev. 888, 968 (1964). The methods of proof and the damages recoverable in actions for breach of contract are well established and need not be embellished by new procedures or new concepts which might tend to confuse both the bar and litigants.

Reardon v. Allegheny Coll., 926 A.2d at 486 (quoting Glazer v. Chandler, 200 A.2d 416, 418 (Pa. 1964)).

Thus, the gist of the action doctrine bars a fraud claim, when (1) the claim arises from a contract between the parties, (2) the duties breached were created by the contract, (3) liability derives from the contract, or (4) where the success of the tort claim is wholly dependent upon the contract's terms. eToll, 811 A.2d at 19. When applying the gist of the action doctrine, the Pennsylvania Superior Court has explained that "a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts.'" Id. at 14 (quoting Bohler–Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir. 2001)). "In other words, the court must inquire as to the source of the duties allegedly breached: 'if the duties in question are intertwined with contractual obligations, the claim sounds in contract, but if the duties are collateral to the

contract, the claim sounds in tort.'" <u>Cunningham Lindsey U.S., Inc. v. Bonnani,</u> No. 13-CV-2528, 2014 WL 1612632 (M.D. Pa. Apr. 22, 2014) (quoting <u>Knit With v. Knitting Fever, Inc.</u>, 2009 WL 3427054, *13-14 (E.D. Pa. Oct. 20, 2009)).

HearBest argues that duties collateral to the contract may arise when the allegations relate to fraudulent promises that induced a party to enter into a contract, particularly where a party agrees to perform obligations that it never intends to perform. <u>Sullivan v. Chartwell Inv. Partners, LP</u>, 873 A.2d 710, 719 (Pa. Super. 2005). However, even in such instances, the gist of the action doctrine will bar claims for fraud in the inducement "where the false representations concerned duties later enshrined in the contract." <u>Vives v. Rodriguez</u>, 849 F.Supp.2d 507, 518-520 (E.D. Pa. 2012)(summarizing the development of "gist of the action" case law in Pennsylvania and holding that fraud in the inducement claims arising out of a misrepresentation as to a party's intent to perform contractual duties are barred where the obligation at issue is included in the contract). Accordingly, because the misrepresentation at issue concerns Adecco's contractual obligation to undertake a criminal background check, HearBest's fraud claim is barred by the gist of the action doctrine.

C.     Damages

HearBest seeks an award of damages in the amount of $200,000, sustained as a result of Adecco's failure to conduct the national criminal record file check before referring McKinney for employment. This amount represents the $16,000 embezzled, additional amounts HearBest contends it incurred as a result of McKinney's conduct in orchestrating a cover-up of her theft, costs related to retaining an accountant to examine and reconcile accounts after discovering the theft, costs related to fees paid to Adecco, and lost sales and expenses related to Medicare re-credentialing, which it contends would not have been required if McKinney did not gain

employment by HearBest. (ECF No. 1-2). Adecco seeks the entry of judgment in its favor as to certain of HearBest's claimed damages, which Adecco contends are either not proximately caused by its breach of the contract, or exceed an express limitation of damages clause.

The contract provides that "[e]ach party's liability under this Agreement; if any, is limited to direct damages and to the risks and responsibilities inherent in that party's business or activity." (ECF No. 29-11, p.2). Elsewhere, the contract provides an "Associate Guarantee," which states: "[i]f for any reason you are dissatisfied with an Associate's qualifications and notify Adecco within the first 8 hours of the assignment, you will not be charged for the hours worked by the Associate and Adecco will make reasonable efforts to provide a replacement. This guarantee is your sole remedy for dissatisfaction with an Associate's qualifications, performance or conduct." (ECF No. 29-11, p. 4). Not surprisingly, Adecco contends that this "guarantee" limits HearBest's recovery to McKinney's salary for eight hours. The Court rejects reliance upon the Associate Guarantee for a number of reasons.

First, in unambiguous language, the Terms and Conditions of the contract broadly assume liability for "direct damages" and the "risks and responsibilities inherent in [Adecco's] business or activity." This assumption of liability conflicts with the nominal damages afforded by the "Associate Guarantee."

Pennsylvania law provides that "[c]ontracts are best read as a whole and 'clauses seemingly in conflict [should be] construed, if possible, as consistent with one another. Terms in one section of the contract should not be interpreted in a manner which nullifies other terms.'" Universal Underwriters Ins. Co. v. A. Richard Kacin, Inc., 916 A.2d 686, 692 (Pa. Super. 2007) (quoting AK Steel Corp. v. Viacom, Inc., 835 A.2d 820, 824 (Pa. Super. 2003) (internal quotation marks and citation omitted)). Reconciling the "Associate Guarantee" in light of the

much broader acceptance of liability for breach does not require a far reach. The Associate Guarantee is triggered upon performance of Adecco's primary obligation to perform a national criminal record file check before referring McKinney as an "Associate." Once a properly vetted candidate is referred, the agreement provides the employing party eight hours to determine if the candidate is qualified for the assignment.[4] Here, however, given Adecco's undisclosed and willful failure to perform the promised criminal background check when it supplied McKinney, the Associate Guarantee is not triggered. Instead, giving meaning to the broader and unambiguous liability clause, Adecco is liable for all "direct damages and to the risks and responsibilities inherent in [its] business or activity." This interpretation harmonizes and gives effect to all of contract provisions.[5]

Second, while it is true that contractual limitations on remedies and damages are enforceable under Pennsylvania law, resort to such clauses is not unlimited. As discerned by the United States Court of Appeals for the Third Circuit in <u>Valhal Corp. v. Sullivan Associates, Inc.,</u>

---

[4] <u>See</u>, <u>also</u>, <u>Atl. City Associates LLC v. Carter & Burgess Consultants, Inc.</u>, No. 05-3227(NLH), 2008 WL 4951354, at *5 (D.N.J. Nov. 13, 2008)(decided under New Jersey law, the court persuasively held that where a contract contains both a provision capping damages in the event of losses under the contract to the amount of compensation received, and also provides an assumption of liability for direct losses, the provisions are in conflict and the broader provision for payment of all direct damages sustained prevails).

[5] In contrast, the Court acknowledges that Pennsylvania courts have upheld clauses limiting liability to nominal amounts where, for instance, security alarm contracts are at issue. <u>See</u>, <u>e.g.</u>, <u>Great N. Ins. Co. v. ADT Sec. Servs., Inc.</u>, 517 F. Supp. 2d 723, 750 (W.D. Pa. 2007); <u>Lobianco v. Prop. Prot., Inc.</u>, 437 A.2d 417, 421 (Pa. Super. 1981)(clause limiting liability to the cost of repairing the burglar alarm system should be enforced). However, a review of the developing case law discloses that the contracts at issue did not contain conflicting provisions expressly assuming liability for all "direct damages and to the risks and responsibilities inherent in [Adecco's] business or activity." Adecco's broad assumption of liability sufficiently distinguishes these cases to permit recovery to the damages Plaintiff.

44 F.3d 195 (3d Cir. 1995), the Pennsylvania Supreme Court has held that a willful or malicious

omission under a contract will render a limitation of liability unenforceable:

> For example, in <u>Behrend v. Bell Tel. Co.</u>, 242 Pa. Super. 47, 72, n. 16, 363 A.2d
> 1152 (1976), (<u>Behrend I</u>), *vacated on other grounds*, 473 Pa. 320, 374 A.2d 536
> (1977), *rev'd and remanded in accordance with prior opinion*, 257 Pa. Super. 35,
> 390 A.2d 233 (1978), a business subscriber sued a telephone company for lost
> profits because the telephone company omitted the subscriber's paid Yellow
> Pages advertisement. The advertising contract contained a provision limiting the
> telephone company's liability for an advertising omission to the monthly charge
> for each month omitted. The court stated that the issue was one of first
> impression, but concluded "[w]e elect to join the majority of jurisdictions in
> upholding tariff limitations." The court then cautioned: "[h]owever, the limitation
> in the tariff is not enforceable if the damage is caused by willful or wanton
> conduct by Bell. The weight of authority supports interpreting the tariff
> limitations to extend only to acts of ordinary negligence and exclude conduct
> found to be willful, malicious or reckless." <u>Behrend</u>, 363 A.2d at 1166. The court
> then ordered that the matter be remanded to determine if the omission was willful
> or malicious. "If appellant Bell's acts are found ... not to be willful or malicious,
> ... damages must be limited to a maximum of the amount specified in the
> [limitation] in the applicable tariff provision." <u>Id.</u> at 1167.

<u>Id.</u>, 44 F.3d at 203.  The Court of Appeals further observed that while limitation of liability

clauses "are a way of allocating 'unknown or undeterminable risks,'" damage caps will not be

enforced where they are unreasonable or "so drastic as to remove the incentive to perform with

due care." <u>Id.</u> at 204.  In <u>Valhal</u>, the Court of Appeals found that a limit of liability of $50,000

was not so nominal "as to negate or drastically minimize [the breaching party's] concern for the

consequences of a breach of its contractual obligations." <u>Id.</u>

In this case, however, it is clear that Adecco accepted a substantial payment for its

"standard pricing," to include a national criminal background check it knew it would not

conduct. Thus, a limitation of liability to McKinney's salary for eight hours not only minimizes

Adecco's concern for the consequences of its anticipatory breach, but it also serves to reward

Adecco for nonperformance of its contractual obligations.  Under these circumstances,

Pennsylvania law would not give effect to the "Associate Guarantee."

The remaining issue is whether Adecco's breach of the agreement was the proximate cause of the damages claimed by HearBest.  Under Pennsylvania law, it is well settled that "[i]n a breach of contract action, damages are awarded to compensate the injured party for loss suffered due to the breach [and t]he purpose of damages is to put the plaintiff in the position he or she would have been in but for the breach." Empire Properties, Inc. v. Equireal, Inc., 674 A.2d 297, 304 (Pa. Super. 1996) (citing Maxwell v. Schaefer, 112 A.2d 69, 73 (Pa. 1955); Harman v. Chambers, 57 A.2d 842, 845 (Pa. 1948)).

However, "damages sought must be a proximate consequent of the breach, not merely remote or possible...." National Controls Corp. v. National Semiconductor Corp., 833 F.2d 491, 496 (3d Cir. 1987); see also, Advent Sys. Limited v. Unisys Corp., 925 F.2d 670, 681 (3d Cir. 1991). HearBest is thus entitled to recover its direct damages, extending "to the risks and responsibilities inherent in [Adecco's] business or activity."

 "'The determination of damages is a factual question to be determined by the [jury].'" ASTech Int'l, LLC v. Husick, 676 F. Supp. 2d 389, 405 (E.D. Pa. 2009)(quoting Delahanty v. First Pennsylvania Bank, N.A., 464 A.2d 1243, 1257 (Pa. Super. 1983)). The plaintiff bears the burden of presenting "sufficient evidence by which damages can be determined on some rational basis and other than by pure speculation and conjecture." Id., (quoting Curran v. Stradley, Ronon, Stevens & Young, 521 A.2d 451, 455 (Pa. Super. 1987)). Because HearBest has sufficiently quantified its damages, it is up to a jury to determine whether it has proved each element alleged is the proximate result of Adecco's breach of its obligations under the contract.  Accordingly, Adecco's motion for judgment in its favor as to certain of HearBest's damages is denied.

**IV.     CONCLUSION**

For the foregoing reasons, Adecco's Motion for Summary Judgment [ECF No. 25] is granted as to HearBest's claim for fraud, but is denied as to HearBest's claim for breach of contract and as to all damages it may prove proximately resulting therefrom. Further, summary judgment is entered in favor of HearBest as to its breach of contract claim, leaving for resolution the extent of damages sustained by HearBest.  An appropriate Order follows.

**<u>ORDER</u>**

AND NOW, this 16th day of December 2014, upon consideration of Defendants' Motion for Summary Judgment (ECF No. 25) and the briefs and exhibits filed in support and in opposition thereto, and for the reasons set forth in the accompanying Opinion, IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 25) is granted as to Plaintiff's claim for fraud, but is denied as to Plaintiff's claim for breach of contract and as to any damages it may prove proximately resulting therefrom.

IT IS FURTHER ORDERED that summary judgment is entered *sua sponte* in favor of HearBest as to its breach of contract claim, leaving for resolution the extent of damages it may prove proximately resulting therefrom.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if any party wishes to appeal from this Order, it must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P.

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc:     All counsel of record by Notice of Electronic Filing